UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JUAN DELLOSANTOS,            )
            Petitioner       )
                             )    CIVIL ACTION
            v.               )    NO. 04-11624-NMG
                             )
UNITED STATES OF AMERICA,    )
            Respondent       )
                             )

### Government's Memorandum In Opposition To Petitioner's Motion Under 28 U.S.C. §2255

#### INTRODUCTION

The United States of America, by Michael J. Sullivan, United States Attorney, and David Hennessy, Assistant U.S. Attorney, for the District of Massachusetts, hereby files this memorandum in opposition to the petitioner's motion under 28 U.S.C. §2255. Juan Dellosantos has filed a petition seeking to vacate or set aside the sentence that this Court imposed on the following grounds: (1) that his attorney was constitutionally ineffective; (2) that because of errors by his attorney, Dellosantos did not understand the nature of the offense to which he was pleading and the consequences of his plea, and therefore that his plea was not knowing and voluntary; (3) that his sentence was unconstitutionally enhanced based on findings of fact that were not proved to a jury beyond a reasonable doubt; and (4) that his prior convictions were improperly included in the calculation of his sentence. Because Dellosantos' claims are procedurally barred or meritless, the petition should be dismissed.

## FACTS AND PRIOR PROCEEDINGS

Juan Dellosantos was indicted in March 2001 on one count of conspiracy to possess with the intent to distribute, and to distribute, cocaine base, also known as "crack," and heroin, in violation of 21 U.S.C. §846 (Count 1); two counts of possession of cocaine base with the intent to distribute it and distribution of it, in violation of 21 U.S.C. §841(a)(1) (Counts 2 and 4); and one count of possession of heroin with the intent to distribute it and distribution of it, in violation of 21 U.S.C. §841(a)(1) (Count 3). [D.9].[1] On October 9, 2001, pursuant to a plea agreement with the government, Dellosantos pleaded guilty to possessing heroin with the intent to distribute it and distributing it, as charged in Count 3 of the indictment. [D.38, 39]. In exchange for Dellosantos' change of plea, the government agreed to dismiss the remaining three counts of the indictment following the imposition of sentence. [D.39].

---

[1]Citations are as follows: "[D._]" refers to a docket entry, "[Def. Brf.]" refers to the defendant's brief dated July 20, 2004, "[Def. Add.]" refers to the defendant's addendum to his brief filed on January 25, 2005, and "[Def. Supp.]" refers to the defendant's supplemental brief filed on March 17, 2005. The government annexes hereto, for the convenience of the Court, the government's Motion for Summary Disposition filed in opposition to the defendant's appellate brief (Exhibit A). Attached to the Motion for Summary Disposition as exhibits are the defendant's plea agreement (cited herein as "[Plea Agr.]"), transcript of the change of plea hearing ("[Plea Hg.]"), and transcript of the sentencing hearing ("[Sn. Hg.]"). The government also annexes the First Circuit Court of Appeals' decision in the matter of United States v. Juan Dellosantos, 02-1178 (Exhibit B).

The evidence established that Dellosantos, along with his co-defendant and brother Antonio Dellosantos, arranged to sell crack cocaine and heroin to a government cooperating witness. [Plea Hg.19-20]. The Dellosantos brothers subsequently directed their co-conspirators to distribute a total of 114.6 grams of crack cocaine and .39 grams of heroin to a cooperating witness on two separate occasions. [Id.].

Dellosantos' plea agreement set forth the parties' position with respect to the guidelines calculation and sentencing recommendation. It provided that the parties would take the position that Dellosantos was a career offender, resulting in a base offense level ("BOL") of 32 and Criminal History Category ("CHC") VI. [Plea Agr. ¶3]. The agreement stated, however, that if Dellosantos was not a career offender, the parties agreed that he was responsible for 114.6 grams of cocaine base and .39 grams of heroin, again resulting in a BOL of 32. [Id.]. In addition, the plea agreement stated that the U.S. Attorney would take the position that Dellosantos was an organizer or leader of the illegal activity, and thus, if the court did not find him to be a career offender, his BOL should be increased by two levels, pursuant to U.S.S.G. §3B1.1(c). [Id.]. The plea agreement also provided that the parties agreed that there was "no basis for a departure" from the applicable guideline sentencing range ("GSR"), and,

3

accordingly, that neither party would seek any departure.[2]    [Id.
¶4].    It also expressly noted that Dellosantos "may also be
deportable and/or excluded by the United States Immigration and
Naturalization Service as a consequence of his conviction of the
offenses to which he is pleading guilty."    [Id.¶2].

On January 15, 2002, this Court sentenced Dellosantos. The
Court determined that Dellosantos had an adjusted offense level
("AOL") of 31,[3] a CHC of V, and a GSR of 168 to 210 months'
imprisonment. [Sn. Hg. 11-12]. Dellosantos did not object to the
Court's calculation of his GSR.    [Sn. Hg.12].

In accordance with the terms of his plea agreement,
Dellosantos did not move for a downward departure on any basis at
the sentencing hearing.    The government recommended that
Dellosantos be sentenced at the low end of the guideline, 168
months, and the defendant argued the same. [Sn. Hg. 16-17].    This
Court sentenced Dellosantos to 188 months of imprisonment, the same
sentence imposed on Dellosantos' brother, co-defendant Antonio

---

[2]The plea agreement provided one exception to this
provision, however: the U.S. Attorney expressly reserved the
right to seek an upward departure pursuant to U.S.S.G. §4A1.3
should any of Dellosantos's prior state convictions be vacated.
[Id.¶4].

[3]Dellosantos's AOL was based on a BOL of 32 (determined by
the amount of crack cocaine and heroin), pursuant to U.S.S.G.
§2D1.1(a)(3), (c)(4); a two-level upward adjustment for his
managerial or supervisory role in the offense, pursuant to
§3B1.1(c); and a three-level downward adjustment for acceptance
of responsibility, pursuant to §3E1.1(a), (b).

Dellosantos, approximately two weeks earlier. [Sn. Hg. 16-17]. The Court explained that it imposed the higher sentence because Dellosantos' culpability warranted it: "[T]he reason you are going to get a sentence equal to your brother's is that you were more culpable than he was, but your criminal history yields a lower level." [Sn. Hg. 16].

On August 16, 2002, the defendant filed an appeal with the First Circuit Court of Appeals.[4]    United States v. Juan Dellosantos, 02-1178.  Dellosantos appealed his sentence on the basis that the attorney who represented him provided constitutionally ineffective assistance by failing to seek a downward departure based on his deportable alien status.  The government filed a motion for summary disposition pursuant to Local Rule 27(c).  See Exhibit A.  In its June 10, 2003 decision, the court found that since Dellosantos waived the right to seek any departures under the terms of his plea agreement, his attorney's failure to do so did not constitute ineffective assistance of counsel. See Exhibit B.  Consequently, the First Circuit allowed the government's motion for summary disposition, and affirmed Dellosantos' judgment of conviction. Id.  Dellosantos did not file a petition for a writ of certiorari.

On July 20, 2004, Dellosantos filed a memorandum of law

---

[4]The defendant appealed jointly with his brother, Antonio Dellosantos.

pursuant to 28 U.S.C. §2255 to vacate or set aside his sentence. On January 25, 2005, he filed an addendum, and on March 17, 2005, he filed a supplemental brief in support of his motion.

**ARGUMENT**

A.    **_Dellosantos has failed to establish a claim of ineffective assistance of counsel_**

Dellosantos claims that he was denied effective assistance of counsel (1) when his attorney did not argue that matters relating to sentencing such as drug weight and drug type must be proved to a jury beyond a reasonable doubt, in accordance with the principles set forth in Blakely v. Washington, 124 S.Ct. 2531 (2004); (2) when his attorney represented to Dellosantos that Dellosantos faced not more than 151 months in jail; and (3) when his attorney induced Dellosantos' guilty plea by advising Dellosantos that, for sentencing purposes, there was no difference between cocaine base and heroin. Each of these claims is without merit.

**a. Legal Principles**

In Strickland v. Washington, 466 U.S. 668 (1984), the Court, in reaffirming that the Sixth Amendment guarantees a criminal defendant "effective" assistance of counsel, said, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. The Court formulated a two-prong test for evaluating counsel's performance. To establish a violation of

the Sixth Amendment, a defendant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceeding.  Id. at 687.    In considering such a claim "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonably professional judgment."  Id. at 690 (emphasis added).  While a defendant must prove both prongs, id. at 687, Dellosantos can establish neither.

### b. Counsel's performance exceeded objective standard

In this case, Counsel's performance met, if not exceeded, an objective standard of reasonableness.    The record shows that Counsel was fully focused on Dellosantos' potential jail exposure, and was diligent in protecting Dellosantos' rights.  Among other things, Counsel negotiated a plea agreement in which Counsel obtain what was considered at the time of the agreement a significant benefit for Dellosantos: pleading to the charge that under the career offender guideline (which guideline the parties believed would determine sentencing) reduced Dellosantos' jail exposure, and providing for dismissal of the charges which carried higher penalties under the same guideline.  Indeed, a plea to a charge involving more than 50 grams of cocaine base - Counts One, Two and Four - which carried a maximum sentence of life imprisonment, would have, under the career offender guideline, established a GSR, with

7

acceptance of responsibility, of 262 - 327. <u>See</u> U.S.S.G. §
4B1.1(A)(offense statutory maximum of life carries an offense level
of 37). As such, a sentence in the middle of the range, as the
Court imposed in this case, would have resulted in a jail term of
approximately 25 years, instead of 15.

Counsel also obtained by negotiation the right to oppose any
role adjustment; obtained the government's agreement to recommend
sentencing at the low end of the applicable guideline range, and
limited the scope of the appellate waiver. <u>See</u> Plea Agr. ¶¶3(B),
4(a) and 6. These concessions coupled with the weight of the
evidence – including Dellosantos' voice on tape arranging sales of
crack cocaine and heroin, <u>see</u> Sn. Hg. p. 11 – show that Counsel was
both a diligent and effective advocate for Dellosantos.

Despite Counsel's advocacy for Dellosantos at every step of
the proceedings – plea negotiations, presentence investigation and
sentencing - Dellosantos claims Counsel was ineffective because his
attorney did not argue that matters relating to sentencing such as
drug weight and drug type must be proved to a jury beyond a
reasonable doubt, in accordance with the principles set forth in
<u>Blakely</u>; (2) when his attorney represented to Dellosantos that
Dellosantos faced not more than 151 months in jail; and (3) when
his attorney induced Dellosantos' guilty plea by advising
Dellosantos that, for sentencing purposes, there was no difference
between cocaine base and heroin. These attacks are unavailing.

8

First, at the time of sentencing, matters that determined the GSR, such a drug weight and drug type, were, as a matter of law, for the judge to find by a preponderance of the evidence.  See e.g. U.S.S.G. §6A1.3, Comment.; <u>United States v. Wihbey</u>, 75 F.3d 761, 776 (1st Cir. 1996).    Effective advocacy does not require an attorney to pursue a claim pointlessly.  See e.g., <u>United States v. Gonzalez-Arimont</u>, 268 F.3d 8, 13-14 (1st Cir. 2001) (counsel's failure to raise double jeopardy claim at change of plea hearing was not ineffective assistance because argument would have been contrary to controlling First Circuit law); <u>see also</u>  <u>Cirilo-Muñoz v. United States</u>, 404 F.3d 527, 533 (1st Cir. 2005)("the use of judge-made findings at sentencing does not undermine 'accuracy' . . . or undermine fundamental fairness" because such fact-finding has "been the conventional practice throughout our nation's history.").

Similarly, Dellosantos' claim that he was misled by his attorney into believing he would not face more than 151 months is devoid of any proof and cannot be squared with the record. Dellosantos offers no evidence – neither affidavit from himself nor Counsel – that Counsel made a hard and fast commitment capping his jail exposure.   And such an assertion is belied by the record. Dellosantos signed a plea agreement which provided, in writing, among other things: that if not a career offender, his base offense level would be 32, and the government would argue for a two-level

9

aggravating role adjustment.  With acceptance of responsibility, such a guideline calculation would place Dellosantos at level 31, exactly the offense level the Court determined.  See Plea Agr. ¶ 3. The plea agreement also advised Dellosantos that neither the Court nor the Probation Department were bound by the guideline calculation in the plea agreement, and that sentencing within the statutory maximum and minimum would be determined by the Court. Id. ¶8.  Finally, during the plea allocution itself, Dellosantos told the Court, under oath, that no promise or assurance of any kind had been made to induce his guilty plea, apart from those set forth in the plea agreement.  See Plea Hg. p.7.  Thus, the record plainly defeats the claim that Counsel promised Dellosantos his sentence would not exceed 151 months.

Lastly, Dellosantos' claim that Counsel's erroneous advice – that heroin and cocaine base were indifferent for sentencing purposes – fails for all the foregoing reasons.  That is to say, both the plea agreement and the careful plea colloquy show that Dellosantos was not under any misunderstanding about his jail exposure, whatever Dellosantos now claims Counsel told him. Moreover, whatever advice Counsel may have given cannot be considered erroneous on this record, because, as was the case at the time of the plea, regardless of the Count to which Dellosantos pleaded guilty, the Court would be required under the Sentencing Guidelines to consider all relevant conduct in determining the GSR,

including distributions of cocaine base.  See U.S.S.G. § 1B1.3
(base offense level shall be determined on the basis of all acts
committed by the defendant; and in the case of jointly undertaken
activity, all reasonably foreseeable acts in furtherance thereof).
Hence, even if said, it was not necessarily inaccurate for Counsel
to advice Dellosantos that for sentencing purposes, it did not
matter whether Dellosantos pleaded to a heroin or cocaine base
charge (except to the extent Dellosantos might have potentially
benefitted under the career offender guideline, to a plea to a
heroin charge) because his GSR would be driven by all his relevant
conduct, and not just his plea conduct.

     In sum, Counsel's advocacy for Dellosantos was both diligent
and professional and Dellosantos' attack on Counsel's performance
fails to meet his substantial burden.

### c.  Dellosantos cannot show prejudice

     Even if there was some lapse in Counsel's decision not to
argue that sentencing factors should be proved to a jury beyond a
reasonable doubt, or in his advice to Dellosantos or in the other
alleged errors - and there was not - Dellosantos nevertheless
cannot establish that he suffered Strickland prejudice as a result.

     Recognizing in Strickland that attorney errors are "as likely
to be utterly harmless in a particular case as they are to be
prejudicial," the Court held that to establish prejudice, a
"defendant must show that there is a reasonable probability that

11

but for counsel's unprofessional errors, the result would have been different." Id. at 693-94; United States v. Ortiz, 23 F.3d 21, 26 (1st Cir. 1994) (to demonstrate prejudice, defendant must show that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceedings would have been different). In the context of a guilty plea, a defendant can show prejudice by demonstrating that but for counsel's deficient performance, a reasonable probability exists that the defendant would not have pleaded and would have insisted on trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Here, Dellosantos cannot make this showing. First, there is no reason to believe that even an impassioned plea from Counsel would have moved this Court to depart from well-settled practice, and empaneled a jury to determine beyond a reasonable doubt drug weight and type. It was not the law when Dellosantos was sentenced and it is not the law today. See United States v. Booker, 125 S.Ct. 738, 749-50 (2005) (concluding that the Sixth Amendment principles announced in Blakely apply to the federal Sentencing Guidelines. The Court found that it is the mandatory nature of the Guidelines that, when combined with judicial fact-finding, implicates the Sixth Amendment. As a remedy, the Court invalidated 18 U.S.C. §§3553(b)(1) and 3742(e) - provisions of the Sentencing Reform Act ("SRA") that make the federal Guidelines mandatory).

With respect to the advice of Counsel - allegedly, that

12

Dellosantos' exposure was capped at 151 months or that for sentencing purposes there was no difference between cocaine base and heroin - there is no reason to believe that the outcome of the case would have been different.  Dellosantos' claim that but for the advice of Counsel he would not have pleaded guilty is simply not credible and, as noted above, is squarely at odds with Dellosantos' sworn statements at the plea colloquy and his signed plea agreement acknowledging that sentencing was a matter committed to the exclusive discretion of the Court.  Indeed, in his plea agreement, Dellosantos expressly stated that he had discussed his case and his plea agreement (including the non-binding nature of the guideline calculation and "possible defenses [he] might have . . . and whether [he] should go to trial," with his attorney).  See Plea Agr. p.8.

Moreover, the overwhelming nature of the evidence, including Dellosantos' recorded voice on tape arranging to sell heroin and crack cocaine, suggests that Dellosantos' claim that he would have opted for trial, is not at all "a reasonable probability."  The government's case included Defendant's inculpatory drug conversations recorded on tape, the testimony of accomplice witnesses, surveillance and the indisputable forensic evidence that Dellosantos' worker delivered both heroin and cocaine base to a government agent.  Like the claim that he would have gone to trial, Dellosantos' claim in the petition that the government's case was

13

based on an admission from Dellosantos that he sold drugs, see Def. Brf. at 9, lacks any support and is not a reasonable probability.

In the end, Dellosantos cannot make either of the requisite Strickland showings, and his attack on the performance of Counsel is without merit.

**B.** **Booker _is not retroactively applicable to Dellosantos' case, because his judgment became final before_ Booker's _decision was announced._**

Dellosantos argues that he should be resentenced pursuant to the Supreme Court's recent decision in Booker, which held that unless the federal Sentencing Guidelines are applied on an advisory basis, they are subject to the Sixth Amendment's requirements of a jury trial. Booker, 125 S.Ct. at 769. The new rule in Booker made it unconstitutional to apply the Guidelines on a mandatory basis, using facts not proved to a jury. Id. Dellosantos argues that since this Court used the Sentencing Guidelines on a mandatory basis when fashioning his sentence, he should be entitled to collateral relief. See Def. Add. at 2.

Dellosantos, however, may not seek resentencing based on a Booker error, because Booker is not retroactively applicable to collateral challenges such as Dellosantos'. The Supreme Court stated that it was applying Booker's holding "to all cases on direct review" as of the date of the decision, January 12, 2005. Id. Dellosantos' case was not pending direct review on January 12, 2005 - since the First Circuit affirmed his conviction in June 2003

14

and Dellosantos did not file a petition for a writ of certiorari, judgment became final 90 days after entry of the Court of Appeals' judgment, in September 2003. See Clay v. United States, 537 U.S. 522, 525 (2003) ("[A] judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."). Since Booker is not retroactively applicable to cases that became final before January 12, 2005, and Dellosantos' judgment became final in September 2003, Dellosantos cannot seek resentencing under Booker's new rule.

New constitutional rules of criminal procedure are generally not retroactively applicable to cases that became final before the decision was announced. Teague v. Lane, 489 U.S. 288, 316 (1989) (plurality opinion). Under Teague, the Supreme Court allows for only two exceptions to the general bar on retroactive application: (1) a new substantive rule that alters the range of conduct or the class of persons that the law punishes, and (2) one of the rare "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Schriro v. Summerlin, 124 S.Ct. 2519, 2520 (2004) (internal quotations omitted); Teague, 489 U.S. at 311. "That a new procedural rule is 'fundamental' in some abstract way is not enough; the rule must be one without which the likelihood of an accurate conviction is seriously diminished." Summerlin, 124 S.Ct. at 2523 (internal

quotations, citations omitted).

In <u>Summerlin</u>, the Supreme Court held that its decision in <u>Ring v. Arizona</u>, 536 U.S. 584 (2002) constituted a new procedural rule that did not apply retroactively to cases already final on direct review. <u>Summerlin</u>, 124 S.Ct. at 2526. In <u>Ring</u>, the Court had applied the <u>Apprendi</u> rule to a death sentence. <u>Id.</u> at 2522; <u>see</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The <u>Summerlin</u> Court determined that the new rule in <u>Ring</u> was procedural, rather than substantive: "<u>Ring</u> altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules." <u>Summerlin</u>, 124 S.Ct. at 2523. Thus, the first <u>Teague</u> exception did not apply to <u>Ring</u>. The Court found that the second <u>Teague</u> exception did not apply because judicial factfinding, while arguably less accurate than a jury, does not "so seriously diminish[] accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." <u>Id.</u> at 2525 (internal quotations omitted). Therefore, it was not part of the "extremely narrow" class of watershed rules that would allow for an exception.

16

Id. at 2523. Accordingly, the Supreme Court held that the rule in Ring could not apply retroactively to cases already final on direct review. Id. at 2526.

Similarly, the First Circuit has held that "the Apprendi rule has no retroactive application to cases in which the judgment of conviction became final before Apprendi was decided." Sepulveda v. United States, 330 F.3d 55, 66 (1st Cir. 2003). The court in Sepulveda found that the first Teague exception did not apply to the Apprendi rule because it "neither places any particular type of conduct beyond the reach of the criminal law nor pretermits any particular type of punishment for a specific class of defendants." Id. at 59. It found that the Apprendi rule did not fall into the second Teague exception because, as a rule pertaining to sentencing, infringement of its rule could not "seriously diminish the accuracy of convictions (which, by definition, must take place before any such infringement occurs)." Id. at 60. Emphasizing that "[w]atershed rules affecting bedrock procedural elements are few and far between," the Sepulveda court found that "Apprendi is not within this small core of cases." Id. at 61. Therefore, it held, "without serious question, that Apprendi prescribes a new rule of criminal procedure, and that Teague does not permit inferior federal courts to apply the Apprendi rule retroactively to cases on collateral review." Id. at 63.

In Booker, the Supreme Court applied the Apprendi rule to the

17

federal Sentencing Guidelines.    <u>Booker</u>, 125 S.Ct. 738, 747-48
(2005).    Like <u>Ring</u>, which applied the <u>Apprendi</u> rule to a death
sentence, and <u>Apprendi</u> itself, <u>Booker</u> should be considered a new
procedural rule that is not retroactively applicable to cases on
collateral review.  By requiring that the Guidelines be applied on
an advisory basis to enhance a defendant's sentence, <u>Booker</u>
"altered the range of permissible methods for determining whether
a defendant's conduct is punishable [in a particular way],"
<u>Summerlin</u>, 124 S.Ct. at 2523.    As the Supreme Court stated in
<u>Summerlin</u>, "[r]ules that allocate decisionmaking authority in this
fashion are prototypically procedural rules."    <u>Id.</u>

Furthermore, like sentence enhancements based on judicial
factfinding, sentence enhancements based on mandatory Sentencing
Guidelines do not seriously diminish the accuracy of convictions.
As the First Circuit recently stated, "[t]he guidelines remain a
central consideration in sentencing; and sentencing courts must
still consider the same statutory factors that the Sentencing
Commission was required to use in promulgating the guidelines.  To
describe the use of mandatory guidelines as generating serious
inaccuracy or fundamental unfairness would not be easy."    <u>Cirilo-
Muñoz</u>, 404 F.3d at 533; <u>see also</u> <u>McReynolds v. United States</u>, 397
F.3d 479, 481 (7th Cir. 2005), <u>cert. denied</u>, 2005 WL 1105026 ("As
a practical matter, . . . sentences would be determined in the same
way if they were sentenced today; the only change would be the

degree of flexibility judges would enjoy in applying the guideline system. That is not a 'watershed' change that fundamentally improves the accuracy of the criminal process."). Like <u>Ring</u> and <u>Apprendi</u>, <u>Booker</u> is a procedural rule that does not fit into the extremely narrow class of "watershed" rules. Thus, <u>Booker</u> should not be retroactively applicable to cases already final on direct review. "Every other circuit that has considered this issue has agreed that <u>Booker</u> does not apply retroactively." <u>Cirillo-Muñoz</u>, 404 F.3d at 533; <u>citing</u> <u>Varela v. United States</u>, 400 F.3d 864, 866-68 (11th Cir. 2005); <u>Humphress v. United States</u>, 398 F.3d 855, 860-63 (6th Cir. 2005); <u>McReynolds</u>, 397 F.3d at 480-81; <u>United States v. Mitchell</u>, 122 Fed.Appx. 539, 540 (2d Cir. 2005) (unpublished); <u>United States v. Leonard</u>, 120 Fed.Appx. 759, 761 (10th Cir. 2005) (unpublished). Consistent with Supreme Court and Circuit Court precedent, <u>Booker</u> should not be retroactively applied to Dellosantos' collateral challenge.[5]

C.   ***Dellosantos' objections to his sentence were not preserved, and he has not shown "cause" or "actual prejudice."***

Assuming *arguendo* that <u>Booker</u> can be retroactively applied to

---

[5] Dellosantos also cites <u>Blakely</u> as authority for his sentencing arguments, [Def. Add. at 1], but <u>Blakely</u> is not applicable here. <u>Blakely</u> pertains to statutory maximums, not the federal Sentencing Guidelines – in fact, the Court expressly declined to address the Guidelines. <u>Blakely</u>, 124 S.Ct. at 2538 n.9 ("The Federal Sentencing Guidelines are not before us, and we express no opinion on them."). Moreover, even if <u>Blakely</u> were on point, it is not applicable retroactively and was decided on June 24, 2004, well after Dellosantos' judgment became final.

collateral challenges, Dellosantos' case does not warrant resentencing. Dellosantos failed to raise a Sixth Amendment challenge to the application of the Guidelines to his case, so he may only pursue his <u>Booker</u> claim if he can show both "cause" for his failure to raise the issue at his sentencing hearing and on direct appeal, and "actual prejudice" resulting from the <u>Booker</u> error. <u>See</u> <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998); <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982). Since Dellosantos' claim does meet these requirements, it cannot give rise to collateral relief.

Dellosantos is unable to establish "cause" for failing to raise the Sixth Amendment issue at trial or on appeal. As discussed in Part A of this memorandum, Dellosantos' counsel at trial was diligent and professional, and cannot be said to have been constitutionally ineffective. The Supreme Court has also held that "the futility of presenting an objection . . . cannot alone constitute cause for a failure to object at trial," <u>Engle v. Isaac</u>, 456 U.S. 107, 130 (1982), so the fact that courts previously rejected challenges to the Sentencing Guidelines under <u>Apprendi</u> does not alone support a finding of cause. Moreover, at no point has the defendant offered an excuse for failing to raise the issue on appeal. Since "a convicted defendant must show . . . 'cause' excusing his *double* procedural default," <u>id.</u> at 167 (emphasis added), the failure to establish cause at *either* level is fatal to

20

his claim.

Even if Dellosantos could establish that he has adequate cause to excuse his double procedural default, he was not actually prejudiced by the Booker error.   To establish the "actual prejudice" requirement, a defendant must show that the error "worked to his *actual* and substantial disadvantage." Frady, 456 U.S. at 170.   This is a demanding standard; it requires that the defendant carry a burden "significantly higher" than he would be required to satisfy on direct review under the plain-error standard.  Id. at 167.

Dellosantos is unable to meet the high burden of the "actual prejudice" requirement because it is unlikely that this Court would have sentenced him differently had the Sentencing Guidelines been advisory. At Dellosantos' sentencing hearing, this Court declined to impose a sentence at the low end of the guideline range, as both the government and the defendant recommended.   [Sn. Hg. 12, 14]. Instead, this Court imposed a higher sentence of 188 months. [Sn. Hg. 16].   This sentence, in the middle of the guideline range rather than at the low end, was consistent with the defendant's culpability in the conspiracy.   As this Court explained to the defendant, "the reason you are going to get a sentence equal to your brother's is that you were more culpable than he was, but your criminal history yields a lower level." [Sn. Hg. 16].  Statements by the Court, when viewed in conjunction with its decision to

impose a sentence higher than the one the parties recommended, shows that this Court was not constrained by the mandatory nature of the Sentencing Guidelines.    Consequently, Dellosantos cannot establish that the <u>Booker</u> error "worked to his *actual* and substantial disadvantage," and therefore, his claim for resentencing must fail.

### D.    <u>*Dellosantos' convictions properly enhanced his sentence.*</u>

Finally, Dellosantos claims that his prior convictions were unconstitutionally included in the calculation of his sentence. <u>See</u> Def. Supp. at 1. As authority for his argument, the defendant cites the recent Supreme Court case, <u>Shepard v. United States</u>, 125 S.Ct. 1254 (2005) (plurality opinion).    Dellosantos argues that since Shepard's sentence enhancement based on "criminal history" was found to be unconstitutional, "the assignation of [Dellosantos'] criminal history points to his prior convictions" was likewise unconstitutional.    [<u>Id.</u> at 3].    Therefore, he concludes, he was improperly placed in CHC V, and instead should have been sentenced based on CHC I. [<u>Id.</u>].

Dellosantos misconstrues the Supreme Court's holding in <u>Shepard</u>, which pertained to the types of documents a court may generally use to determine the character of an admitted burglary. <u>Id.</u> at 1262.    The Court has not held, in <u>Shepard</u> or otherwise, that the fact of a prior conviction must be proved beyond a reasonable doubt or admitted by the defendant.    In fact, the Court explicitly

22

held otherwise in <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998), and left an exception for prior convictions in the <u>Apprendi</u> rule, and in the subsequent decisions affirming it.  <u>Apprendi</u>, 530 U.S. at 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added); <u>see</u> <u>also</u> <u>Shepard</u>, 125 S.Ct. at 1262; <u>Booker</u>, 125 S.Ct. at 756; <u>Blakely</u>, 124 S.Ct. at 2536; <u>Dretke v. Haley</u>, 541 U.S. 386, 395 (2004).

Furthermore, in signing his plea agreement, Dellosantos specifically agreed "to take the position that Defendant is a Career Offender, and that pursuant to U.S.S.G. § 4B1.1, Defendant's base offense level is 32 and his Criminal History Category is VI." [Plea. Agr. 2].  The defendant also did not object to any part of the presentence report pertaining to his prior convictions or the calculation of his criminal history level during his sentencing hearing.  Even if the Supreme Court reversed itself and held that the fact of a prior conviction must be admitted or proved to a jury – which it has not – Dellosantos' prior convictions would be properly counted because he admitted to them.

## Conclusion

Based on the foregoing, the government respectfully requests that the Court dismiss Dellosantos' §2255 petition since it is either barred as a matter of law or the undisputed facts demonstrate that it is without merit.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _David Hennessy_

David Hennessy
Assistant U.S. Attorney

DATED:    June 22, 2005.

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

Juan Dellosantos
Inmate No. 16686-265
FCI Loretto
P.O. Box 1000
Loretto, PA 15940

This 22 day of June 2005.

_David Hennessy_

David Hennessy
ASSISTANT UNITED STATES ATTORNEY

24